**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANYKA HARRIS and BOBBY REEDOM,<br><br>  Plaintiffs,<br><br>v.<br><br>CITY OF TULARE, et al.,<br><br>  Defendant. | Case No. 1:18-cv-01135-JLT-SKO<br><br>ORDER DENYING MOTION TO CERTIFY AS FRIVOLOUS INTERLOCUTORY APPEAL RE QUALIFIED IMMUNITY<br><br>(Doc. 69)<br><br>CASE WILL REMAIN STAYED |

## I.  INTRODUCTION

This is a civil rights case concerning the March 12, 2018, officer-involved shooting of Jontell Reedom ("Decedent" or "Jontell"), the son of Plaintiffs Anyka Harris and Bobby Reedom. (Doc. 1.) The shooting ultimately resulted in Jontell's death. (*Id*.) This case was filed on August 22, 2018, and alleged, among other things, that City of Tulare Officers Clemente Clinton and Jose Valencia violated Decedent's constitutional rights. (*Id*.) Defendants filed a motion for summary judgement on June 10, 2020. (Doc. 33.) The motion was ripe for decision as of July 2, 2020, (Doc. 40), but was not ruled upon until January 24, 2022, (Doc. 62 ("MSJ Order")), at least in part due to the judicial resource emergency that has persisted in this District for some time. After the previously (temporarily) assigned district judge issued the MSJ Order, the case was reassigned to the undersigned. (Doc. 61.)

1

In sum, the MSJ Order concluded that there were disputed issues of fact related to Plaintiff's Fourth Amendment claim that Defendants used excessive force against Decedent; as a result, summary judgment was denied as to that federal claim and related state law claims.[1] (*See generally* MSJ Order.)

On January 28, 2022, Defendants filed a notice of interlocutory appeal from the MSJ Order. (Doc. 64.) On February 24, 2022, Plaintiff filed a motion to certify the appeal as frivolous. (Doc. 69.) Defendants opposed the motion, (Doc. 71), and Plaintiff's replied (Doc. 72). The matter was submitted for decision on the papers. (Doc. 70.)

Having carefully considered the MSJ Order, the motions papers, and relevant appellate documents[2] in light of the entire record, the Court will deny the request to certify the appeal as frivolous.

## II.   LEGAL STANDARD

Under 28 U.S.C. § 1291, circuit courts generally lack jurisdiction to hear interlocutory appeals from the denial of summary judgement. However, an exception applies where the movant was denied summary judgement on qualified immunity grounds. *Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 944 (9th Cir. 2017) (citing *Knox v. Southwest Airlines*, 124 F.3d 1103, 1106 (9th Cir. 1997)). This is because qualified immunity is an immunity from suit rather than merely an affirmative defense, and "the immunity is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 512 (1985); *see also Isayeva*, 872 F.3d at 944-45. Accordingly, the circuit court has jurisdiction over an interlocutory appeal from a denial of summary judgment to "review a denial of qualified immunity where a defendant argues . . . that the facts, even when considered in the light most favorable to the plaintiff, show no violation of a constitutional right, or no violation of a right that is clearly established in law." *Isayeva*, 872 F.3d at 945 (internal quotation marks omitted); *see also Knox*, 124 F.3d at 1107 ("[W]e have

---

[1] Plaintiff's claims against the City of Tulare were voluntarily dismissed and Summary Judgment was granted as to Plaintiff's Fourteenth Amendment claims. (*See* MSJ Order at 35.)

[2] The appellate briefs are properly the subject of judicial notice. *See* Fed. R. Evid. 201; See *Est. of Neil v. Cnty. of Colusa*, No. 2:19-CV-02441-TLN-DB, 2022 WL 4291745, at *3 (E.D. Cal. Sept. 16, 2022) (court cannot accept as true representations made court documents but "may take judicial notice of the documents themselves and that those representations were made").

jurisdiction over an interlocutory appeal from the denial of qualified immunity where the appeal focuses on whether the defendants violated a clearly established law given the undisputed facts, while we do not have jurisdiction over an interlocutory appeal that focuses on whether there is a genuine dispute about the underlying facts."). Thus, in order to present an issue with respect to qualified immunity subject to review on interlocutory appeal, "[t]he officials must present the appellate court with a legal issue that does not require the court to "consider the correctness of the plaintiff's version of the facts . . ." *Cunningham v. City of Wenatchee*, 345 F.3d 802, 807 (9th Cir. 2003); *see also Pauluk v. Savage*, 836 F.3d 1117, 1121 (9th Cir. 2016) ("[W]e do have jurisdiction, construing the facts and drawing all inferences in favor of Plaintiffs, to decide whether the evidence demonstrates a violation . . . and whether such violation was in contravention of federal law that was clearly established at the time.").

A proper interlocutory appeal of an order denying qualified immunity on summary judgment ordinarily divests the district court of jurisdiction to proceed with trial, unless the district court certifies in writing that the appeal is frivolous, in which case it may proceed with trial. *Chuman v. Wright*, 960 F.2d 104, 105 (9th Cir. 1992); *see also Behrens v. Pelletier*, 516 U.S. 299, 310–11 (1996) (approving the process of certifying an appeal of a denial of qualified immunity as frivolous as it "enables the district court to retain jurisdiction pending summary disposition of the appeal, and thereby minimizes disruption of the ongoing proceedings"); *Padgett v. Wright*, 587 F.3d 983, 985 (9th Cir. 2009).

An appeal is frivolous if the results are obvious, or the arguments are wholly without merit. *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1003 n.3 (9th Cir. 2002); *see also In re George*, 322 F.3d 586, 591 (9th Cir. 2003); *Knox*, 124 F.3d at 1106 (Explaining that the strength of the appeal does not affect appellate jurisdiction and district courts may "prevent potential abuse from defendant officials by establishing summary procedures to weed out frivolous or simply repetitive motions.") "This means that the appeal must be so baseless that it does not invoke appellate jurisdiction such as when the disposition is so plainly correct that nothing can be said on the other side." *Schering Corp. v. First DataBank, Inc.*, No. C 07–01142 WHA, 2007 WL 1747115 at *3 (N.D. Cal. June 18, 2007) (quoting *Apostol v. Gallion*, 870 F.2d

1335, 1339 (7th Cir. 1989)); *see also Peck v. Cnty. of Orange*, 528 F. Supp. 3d 1100, 1104 (C.D. Cal. 2021) (citing Schering with approval when applying the "so baseless" standard to determine whether an appeal on qualified immunity grounds was frivolous).

### III.   DISCUSSION

Plaintiffs advance two arguments in support of their position that the interlocutory appeal concerning the denial of qualified immunity is frivolous. The first argument focuses on the requirement that a proper qualified immunity interlocutory appeal must present the appellate court with a legal issue that does not require the court to "consider the correctness of the plaintiff's version of the facts . . ." *Cunningham*, 345 F.3d at 807. Plaintiffs suggest that Defendants, while giving lip service to the above requirement, do not *actually* rely on Plaintiff's version of the facts in their appellate briefing.[3]

Plaintiffs' argument on this point is conclusory. Plaintiffs do not identify where Defendants' appellate briefing departs from the facts assumed by this Court in the MSJ Order. The MSJ Order found generally that a reasonable jury could conclude that, at the time of the shooting, Decedent did not pose an immediate threat to the safety of the officers or others. (*Id*. at 19.) Viewing the record in the light most favorable to Plaintiffs, the MSJ Order summarized the relevant evidence as follows.

> Jontell had been involved in a physical fight with the officers and was evading them on a city street with cars nearby. Officers Clinton and Valencia had tried other methods of subduing Jontell. Jontell had taken officer Valencia's baton and was moving away from the officers when officers Clinton and Valencia shot and killed him. Jontell was not brandishing the baton above his head when shot.

*Id*.

Defendants' appellate briefs adopt—albeit somewhat reluctantly—the version of the facts

---

[3] Plaintiffs also argue that Defendant's *MSJ briefs filed in this Court* failed to assume Plaintiff's version of the facts. (*See* Doc. 69 at 5; Doc. 72 at 2.) Plaintiffs cite one case, *Todd v. LaMarque*, No. C 03-3995-SBA, 2008 WL 205591, at *3 (N.D. Cal. Jan. 24, 2008), in which the trial court noted that the defendant's motion for summary judgment plainly "disregard[ed] evidence favorable to the plaintiff," and was "blighted" by that "misrepresentation." The *LaMarque* court took that fact into consideration in finding that a subsequent appeal premised on similar grounds was frivolous. *Id*. That is not what happened here. As the MSJ Order reveals, the facts were confusing and close, and it was in large part the Court's own careful examination of a video taken by a bystander that ultimately drove it to find a material dispute of fact. (*See, e.g*., MSJ Order at 7–8, 18–19.) It is unsurprising and wholly appropriate for a defendant to argue—within the bounds of the summary judgment standard—for an interpretation of such evidence that favors their side. Defendants did that in this case.

4

assumed by the Court in the MSJ Order and then pivot to challenge the MSJ Order's evaluation of whether those facts constitute a violation of clearly established law. (*See* Appellants' Opening Brief, *Harris v. City of Tulare*, No. 22-15142, Docket No. 7 at 14 ("Although the district court determined that the position of Jontell's hand at the moment of the shooting was the material issue of fact precluding a determination that there was no constitutional violation as a matter of law, the circumstances underlying an analysis of 'clearly established' law are not in dispute."), 16 ("In the instant case, neither the Plaintiffs nor even the district court came anywhere close to satisfying the Supreme Court's repeatedly demanding standard of citing existing precedent which would have placed these officers on sufficient notice in 2018 that it would have been beyond debate that their split-second decisions in the specific context of this case would violate clearly established law.") 17 (arguing that the cases relied upon in the MSJ Order were distinguishable because in each case shots were fired after a delay and under circumstances where the suspect was "clearly unarmed"); *see also* Appellants' Reply Brief, *Harris v. City of Tulare*, No. 22-15142, Docket No. 7 (reiterating the above arguments).), Plaintiffs' assertion that Defendants' appeal does not assume Plaintiffs' version of the facts is unfounded.

Somewhat more compelling is Plaintiffs' second argument, which contends that there is a "clear" outcome when Plaintiffs' version of the facts is assumed, namely that "Defendant Officers' use of deadly force [is] at odds with clearly established law." (Doc. 69 at 7.) Though the MSJ Order ultimately reached the conclusion that summary judgment was not appropriate on the use of force issue, the Court is tasked here with evaluating whether that result was "obvious," *see Kitsap Physicians Serv.*, 314 F.3d at 1003 n.3, or, put another way, "the disposition is so plainly correct that nothing can be said on the other side," *Schering Corp*, 2007 WL 1747115 at *3. In the present briefing, the parties engage in a detailed debate over the caselaw cited in the MSJ Order, arguing over, among other things, (1) whether certain cases that post-dated Jontell's shooting were appropriately referenced/utilized in the Court's determination of what amounted to "clearly established law" applicable to the Defendants' conduct in this case; and (2) the extent to which those cases are distinguishable and therefore irrelevant (or at least less important) to the "clearly established law" analysis. Having carefully examined these arguments, the Court need only

determine whether there are legitimate arguments on both sides; there are. To give just one example, Defendants argue in their appellate briefs that the MSJ Order relied on cases that are distinguishable because "the force in each case was used after a substantial time delay during which period the suspect was clearly unarmed." (Appellee's Opening Brief, Docket No. 7 at 24.) There are various reasons why the Ninth Circuit may find Defendants' arguments on this and other points unpersuasive, some of which are set forth in Plaintiff's reply brief related to the pending motion (Doc. 72) and answering appellate brief (Appellees' Joint Answering Brief, *Harris v. City of Tulare*, No. 22-15142, Docket No. 14), but the undersigned does not find either side's arguments so overwhelming that the issue's resolution is rendered truly "obvious." Consequently, Plaintiffs' motion to certify the interlocutory appeal is **DENIED**, and this case will remain stayed.[4]

**CONCLUSION**

For the reasons described above:

(1) Plaintiffs' motion to certify Defendants' interlocutory appeal as frivolous (Doc. No. 69) is **DENIED**.

(2) The case shall remain **STAYED** until the Ninth Circuit resolves the pending interlocutory appeal.

(3) The parties are directed to submit a status report within fourteen days of any final resolution of the appeal, or every 120 days, whichever is sooner, updating the Court on the status of the appellate process or on the need for further proceedings.

IT IS SO ORDERED.

Dated:   **October 13, 2022**

UNITED STATES DISTRICT JUDGE

---

[4] The Court notes that the appeal has progressed since the motion to certify as frivolous was filed. A minute order docketed September 25, 2012, indicates that oral argument has been scheduled for December 22, 2022. Given this Court's current, extraordinarily heavy criminal trial calendar—the result of resuming criminal trials after the extended shutdown necessitated by the COVID-19 public health emergency—the Court does not believe it could have scheduled this trial to take place in 2022, even if the appeal had been deemed frivolous and the stay lifted.